UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 16-CR-661-1 (ARR) |
| -against- | |
| OVIDIO PEREZ SANCHEZ, | **OPINION & ORDER** |
| *Defendant*. | |

ROSS, United States District Judge:

Proceeding *pro se*, Ovidio Perez Sanchez moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 821 to the United States Sentencing Guidelines. Mr. Perez Sanchez also moves for a modification of his existing sentence to add a one-day term of supervised release to the end of his period of incarceration so that he might benefit from certain programs created under the First Step Act. For the reasons stated below, I DENY Mr. Perez Sanchez's motion for a sentence reduction and GRANT his motion to add a term of supervised release.

## BACKGROUND

Mr. Perez Sanchez is a native and citizen of Colombia who was paroled to the United States for prosecution in this case. Presentence Investigation Report 2 ("PSR"), ECF No. 136. In March 2019, Mr. Perez Sanchez pleaded guilty to international cocaine distribution conspiracy. ECF No. 84; *see* Redacted Superseding Indictment ¶ 1, ECF No. 14. At the time I originally sentenced him, he had an offense level of 47 and a criminal history category of I (zero criminal history points),

corresponding to an advisory guideline range of life imprisonment.[1] *See* PSR ¶¶ 37, 65–66. This offense level calculation included a four-point aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(a) given the defendant's role as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. *Id.* ¶ 31. ███████████████████████████████████████████████████████████████████████████████

On January 18, 2021, I adopted the presentence investigation report without change—including the Section 3B1.1 enhancement—but sentenced Mr. Perez Sanchez to 108 months' imprisonment due to ████████████████████████████████████, among other factors. ECF No. 170; Statement of Reasons, ECF No. 172; Sentencing Tr. at 20:18–23:4, ECF No. 191. I did not sentence him to any supervised release because he would likely eventually be deported. ECF No. 170 at 3; Sentencing Tr. at 25:16–26:4. At the time that I sentenced Mr. Perez Sanchez, he was not subject to any Immigrations and Customs Enforcement ("ICE") detainer. *See* PSR at 1. As of February 7, 2023, he had been served with an ICE detainer but was not subject to a final order of removal. *See* Judicial Consideration Req. 2, ECF No. 180.

Mr. Perez Sanchez moved for a sentence reduction on December 4, 2023. Mot. Reduce Sentence, ECF No. 182. The government filed its opposition on February 7, 2024. Govt's Opp'n Mot. Reduce Sentence ("Govt's Opp'n"), ECF No. 186. Mr. Perez Sanchez did not file any reply, but filed a separate motion requesting a nominal term of supervised release on February 20, 2024. Mot. Requesting Supervised Release, ECF No. 188. The government did not file any response.

---

[1] Mr. Perez Sanchez asserts that at the time of sentencing, his offense level was 31. Mot. Reduce Sentence ¶ 8, ECF No. 182. As reflected in the PSR, which I adopted in my findings at sentencing, this is incorrect. *See* PSR ¶ 37; Statement of Reasons, ECF No. 172.

## DISCUSSION[2]

### I.  Mr. Perez Sanchez Is Ineligible for a Sentence Reduction under U.S.S.G. § 4C1.1.

Amendment 821, as relevant here, added U.S.S.G. § 4C1.1, which provides a two-point offense level reduction for certain defendants who have no criminal history points under Chapter Four, Part A, of the Guidelines. Under the Sentencing Guidelines, to decide "whether, and to what extent, a reduction in the defendant's term of imprisonment . . . is warranted", I must "determine the amended guideline range that would have been applicable to the defendant if" Amendment 821 "had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). ▇

▇

▇

▇

▇ To be eligible for any such reduction, a defendant must meet certain criteria, including that he "did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. [§] 848." U.S.S.G. § 4C1.1(a)(10).

Mr. Perez Sanchez urges me to exercise my discretion to reduce his sentence because a two-point reduction would bring his total offense level to 45. Mot. Reduce Sentence ¶¶ 9–11; *see*

---

[2] Because Mr. Perez Sanchez is a *pro se* litigant, I hold his submissions to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). I accordingly construe his submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quotation marks omitted). That said, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)).

Govt's Opp'n 3, 6. I am unable to do so: Mr. Perez Sanchez is ineligible for a reduction under Section 4C1.1(a)(10) because he received an aggravating role enhancement under Section 3B1.1. *See* Presentence Investigation Report ¶ 31. The fact that he was not engaged in a continuing criminal enterprise, *see generally* Redacted Superseding Indictment, is of no consequence: Section 4C1.1(a) states that a defendant must meet "all of the following criteria" to be eligible for a sentence reduction, and a lack of an adjustment under Section 3B1.1 is one of those criteria. U.S.S.G. § 4C1.1(a)(10). Courts interpreting this provision have concluded, as do I, that Section 4C1.1(a) precludes a sentence reduction for a defendant who, although not engaged in a continuing criminal enterprise, nonetheless received an adjustment under Section 3B1.1. *United States v. Urias-Avilez*, No. 15-CR-10152, 2024 WL 626165, at *2 (D. Kan. Feb. 14, 2024); *United States v. Diaz-Pellegaud*, No. 09-CR-40029, 2024 WL 417105, at *2 (D.S.D. Feb. 5, 2024); *United States v. Castaneda Mendez*, No. 20-CR-20155, 2024 WL 216277, at *3 (S.D. Fla. Jan. 18, 2024); *United States v. Gordon*, No. 19-CR-00007, 2023 WL 8601494, at *3 (D. Me. Dec. 12, 2023). I accordingly deny Mr. Perez Sanchez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 821 to the United States Sentencing Guidelines.

## II.    Mr. Perez Sanchez's Sentence Is Modified to Include a Term of Supervised Release.

Mr. Perez Sanchez next requests that I impose a one-day term of supervised release in addition to his current term of incarceration. Mot. Requesting Supervised Release. The reasoning for this seemingly counterintuitive request is as follows: He has participated in numerous recidivism-reducing programs created under the First Step Act ("FSA"), but currently cannot apply credits earned through these programs toward early release because I did not originally sentence him to any supervised release. If I were to sentence him to some amount of supervised release, he could apply his FSA credits to his current term of incarceration.

When I sentenced Mr. Perez Sanchez, I did not order any supervised release because of the likelihood that he would eventually be deported. Sentencing Tr. 25:16–26:4. Indeed, the Federal Sentencing Guidelines provide that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute" and the noncitizen defendant "likely will be deported after imprisonment." U.S.S.G. § 5D1.1(C). The Second Circuit has held, however, that this provision does not categorically bar district courts from imposing supervised release where it is appropriate given "the facts and circumstances of a particular case." *United States v. Alvarado*, 720 F.3d 153, 155 (2d Cir. 2013) (quoting *United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012)).

Understanding the facts and circumstances of this case requires some explanation of how the FSA functions. The FSA allows certain incarcerated individuals to earn credits by participating in "recidivism reduction programs" and to apply those credits "toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). "The effect of this provision for some prisoners is early release from incarceration and a concomitant transition into post-release supervision." *United States v. Piña*, No. 01-CR-619, 2023 WL 8759830, at *2 (S.D.N.Y. Dec. 19, 2023). Using FSA credits, an incarcerated individual may be transferred to supervised release as early as twelve months ahead of schedule "[i]f the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3624(g)(3). Mr. Perez Sanchez is ineligible to apply his credits toward early release, however, if he is "the subject of a final order of removal." 18 U.S.C. § 3632(d)(4)(E)(i). Previously, the Bureau of Prisons ("BOP") precluded incarcerated individuals who were subject to ICE detainers from applying FSA credits toward early release; on February 6, 2023, however, it changed this policy, clarifying that only those subject to final orders of removal are prohibited

5

from applying their credits. *See* U.S. Dep't of Justice, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf.

Mr. Perez Sanchez does not identify any statute authorizing me to modify his sentence after judgment, and I "lack[] the authority to alter a sentence after the time of sentencing, except where Congress has provided otherwise." *United States v. Petit*, 541 F. Supp. 3d 304, 309 (S.D.N.Y. 2021). I therefore join other courts in construing this motion as a request for modification of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). *See Piña*, 2023 WL 8759830, at *3; *United States v. Bevz*, No. 21-CR-618, 2023 WL 8936323, at *1 (S.D.N.Y. Dec. 27, 2023); *United States v. Nunez-Hernandez*, No. 14-CR-20, 2023 WL 3166466 (D. Minn. Apr. 27, 2023); *United States v. Oprea*, No. 11-CR-64, 2023 WL 6958690 (D.N.H. Oct. 20, 2023). Although this statute expressly "contemplates the situation in which an inmate is seeking a *reduction* to his . . . original sentence," not one in which he seeks "a modest *increase* to that sentence," *Oprea*, 2023 WL 6958690, at *2, the practical effect of granting Mr. Perez Sanchez's request would be a reduction in his term of incarceration. That Mr. Perez Sanchez is technically seeking an increase to his sentence should not bar him from seeking the practical relief that Section 3582(c)(1)(A) was designed to afford, and indeed, even the courts that have denied defendants' motions in similar circumstances have done so on the merits, not because they deemed the statute inapplicable. *See, e.g.*, *Piña*, 2023 WL 8759830, at *4–7; *Bevz*, 2023 WL 8936323, at *1.

Section 3582(c)(1)(A) permits me to modify a defendant's term of imprisonment, "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," if I find that "extraordinary and compelling reasons warrant such a" modification and that such a modification is "consistent with applicable policy statements issued by the Sentencing

Commission."[3] This latter provision, newly amended as of November 1, 2023, requires me to find that granting the relief Mr. Perez Sanchez seeks would be consistent with the policy statement in U.S.S.G. § 1B1.13, which in turn "sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." *United States v. Feliz*, No. 16-CR-809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023). That policy statement offers several examples of what might constitute "extraordinary and compelling circumstances"—medical circumstances, age, family circumstances, or abuse by BOP personnel—but also includes a catchall provision for "any other circumstance" that is "similar in gravity" to those specifically named. U.S.S.G. § 1B1.13(b). In adopting this amendment, the Sentencing Commission expressly rejected a requirement that reasons falling within the catchall provision "be similar in nature and consequence to the specified reasons. Rather, they need be similar *only* in gravity." U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 (Nov. 1, 2023), https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2023/APPENDIX_C_Supplement.pdf (emphasis added).

I conclude that the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, weigh in favor of modifying Mr. Perez Sanchez's sentence to add a term of supervised

---

[3] The statute also requires federal prisoners to comply with an administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). This requirement is not jurisdictional, however, and can accordingly be waived or forfeited by the government. *United States v. Saladino*, 7 F.4th 120, 122–23 (2d Cir. 2021). I deem the government's lack of response to Mr. Perez Sanchez's motion to be a forfeiture of Section 3582(c)(1)(A)'s exhaustion requirement. Moreover, I can excuse the exhaustion requirement "where exhaustion would be futile," *United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023), and conclude that it would be futile here: "BOP officials have informed [Mr. Perez Sanchez] that FSA time credits will not be applied . . . . There is nothing indicating the BOP will alter this position." *Piña*, 2023 WL 8759830, at *4 n.6 (quoting *Sierra v. Jacquez*, No. 22-CV-1509, 2022 WL 18046701, at *2 (W.D. Wash. Dec. 27, 2022)); *see* Mot. Requesting Supervised Release, Ex. A. To the extent that Mr. Perez Sanchez did not comply with Section 3582(c)(1)(A)'s exhaustion requirement, I excuse that requirement.

release. Section 3553(a)(2) emphasizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant[,] and . . . to provide the defendant with needed educational or vocational training . . . in the most effective manner." Because Mr. Perez Sanchez is currently ineligible to apply FSA credits toward early release, he is not incentivized to participate in the FSA's "evidence-based recidivism reduction programming and productive activities." 18 U.S.C. § 3632(b). Granting his request—and thereby making him eligible to apply FSA credits toward early release—would incentivize him to participate in rehabilitative programming and decrease the likelihood that he would commit "further crimes." *See Oprea*, 2023 WL 6958690, at *3 ("Absent such relief, one would expect that inmates without a term of supervised relief will be less likely to participate in such programs, to the detriment of society as a whole."). This factor therefore weighs heavily in favor of modifying Mr. Perez Sanchez's sentence.

Section 3553(a)(6), meanwhile, emphasizes "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Currently, any defendant with a similar record who was found guilty of similar conduct and sentenced to supervised release is eligible to apply FSA credits toward early release and, as a result, may be released from incarceration as many as twelve months earlier than Mr. Perez Sanchez. *See* 18 U.S.C. § 3624(g)(3). The only difference between such a defendant and Mr. Perez Sanchez would be that the other defendant was sentenced to supervised release because he or she is not a noncitizen who "likely will be deported after imprisonment." U.S.S.G. § 5D1.1(C). A twelve-month sentencing disparity between defendants who are similarly situated in all respects other than their immigration status is certainly unwarranted. This factor therefore also weighs heavily in favor of modifying Mr. Perez Sanchez's sentence. To the extent that any of the Section 3553(a) factors

8

weigh against granting Mr. Perez Sanchez's motion, this and the factor discussed in the preceding paragraph outweigh them.

I further find that extraordinary and compelling circumstances warrant the modification that Mr. Perez Sanchez is seeking. As discussed, he is unable to earn credit for participation in recidivism-reducing activities solely because I did not sentence him to any supervised release—and I did so because he would *likely* be deported after imprisonment. Sentencing Tr. 25:16–26:4; *see* U.S.S.G. § 5D1.1(C). Mr. Perez Sanchez is not subject to a final order of removal, however, and since I sentenced him, the BOP has clarified that individuals subject only to ICE detainers are eligible to apply FSA credits toward their early release. *See* U.S. Dep't of Justice, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf. There is a significant difference between an individual's possible eventual deportation and a final order of removal. *See Roldan v. Racette*, 984 F.2d 85, 88 (2d Cir. 1993) (describing the "clear majority view" that an ICE detainer "does not result in present confinement" by ICE, but is merely "a notice that future [ICE] custody will be sought at the conclusion of a prisoner's pending confinement by another jurisdiction"); *Bell v. U.S.I.N.S.*, 292 F. Supp. 2d 370, 373–74 (D. Conn. 2003) ("Unlike a final order of removal, a detainer is not a definitive decision regarding deportation or an order that will necessarily result in [ICE] taking [a prisoner] into custody . . . . A detainer is more of a notice."). I see no reason that Mr. Perez Sanchez's immigration status should preclude him from earning and applying FSA credits for as long as he is subject to only an ICE detainer. Indeed, to subject him to more incarceration merely because of his immigration status would be "similar in gravity" to a refusal to reduce the term of imprisonment for an individual with a serious health condition or extenuating family circumstances. U.S.S.G. § 1B1.13(b).

I recognize that this conclusion departs from those reached by several other judges within this circuit. *Piña* is distinguishable in that the defendant there *was* subject to a final order of removal; to the extent that the decision deemed the catchall provision of Section 1B1.13(b) to be inapplicable, I respectfully disagree with its reasoning. 2023 WL 8759830, at *3–5. Similarly, I respectfully diverge from the reasoning in *Bevz*, which held that because the defendant there would likely be deported immediately following his release from prison, his "ineligibility for early release d[id] not constitute an extraordinary and compelling reason for modifying his sentence." 2023 WL 8936323, at *1. As explained, I do not think that an individual's possible future deportation is relevant to whether he should presently be eligible to apply FSA credits toward early release; likewise, I do not think that the mere fact that an individual may later be deported lessens any injustice in effectively requiring him to serve a longer sentence than an otherwise similarly situated individual who faces no such risk. Finally, I respectfully disagree with the conclusion in *United States v. Saleem*, 18-CR-274, ECF No. 115 (S.D.N.Y. Mar. 22, 2023), that there were no unwarranted disparities between the defendant and similarly situated defendants whose sentences included terms of supervised release. *Id.* at 1-2. To effectively subject Mr. Perez Sanchez to a longer term of incarceration than an otherwise similarly situated defendant not subject to any immigration enforcement action would be, in my view, a quintessential unwarranted disparity.

I instead agree with the reasoning of the District of New Hampshire in *Oprea* and conclude that "there are 'extraordinary and compelling reasons' that warrant the modification of [Mr. Perez Sanchez's] sentence so that it includes a term of supervised release." 2023 WL 6958690, at *4 (quoting 18 U.S.C. § 3582(c)). As in *Oprea*, but for Mr. Perez's likely deportation I "would have originally sentenced him to a significant period of supervision." *Id.* To deny him the relief he now seeks would prevent the goals of the First Step Act from being "fully realized." *Id.*; *see United*

10

*States v. Ruvalcaba*, 26 F.4th 14, 26 (1st Cir. 2022) ("Congress recognized the need for a 'safety valve' with respect to situations in which . . . circumstances had changed such that the length of continued incarceration no longer remained equitable."); *cf. Setser v. United States*, 566 U.S. 231, 242–43 (2012) (noting that "when the district court's failure to anticipate developments that take place after the first sentencing produces unfairness to the defendant," section 3582(c)(1)(A) "provides a mechanism for relief" (cleaned up)). I accordingly grant Mr. Perez Sanchez's motion and add a one-day term of supervised release to his sentence.

## CONCLUSION

For the foregoing reasons, I DENY Mr. Perez Sanchez's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 821 to the United States Sentencing Guidelines, and I GRANT his motion requesting a one-day term of supervised release.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated: March 12, 2024
Brooklyn, New York

11